## PHALON *v*. THE HADJI.

*(District Court, E. D. New York.* January 5, 1880.)

ADMIRALTY—NEGLIGENCE.—It is not negligence to cover the lower deck beams of a steamer with loose planks, for the purpose of stowage, when the party injured has notice of the manner in which they are placed, and uses the same without any necessity.

BENEDICT, J. This is an action *in rem* to enforce a lien upon the steamship Hadji for the damage sustained by the libellant by reason of injuries occasioned by his falling from the between-decks to the lower hold of that steamship in the port of New York, on the eighth day of September, 1877.

The following are the facts : The steamship was an open-beam vessel; that is to say, she had beams running across the hold on which a lower deck could be, but never had been, constructed. Vessels of this description are not uncommon. They are not unfinished vessels, but a kind of vessel used in navigation. The lower deck beams of this one were about seven feet apart; around the sides of the vessel, at the end of the beams, was a stringer, forming a passage on which a person could pass in safety fore and aft in the between-decks, and which was used for that purpose. There were also beams some two feet wide running across the vessel, capable of being used and actually used to pass from one side of the between-decks to the other.

The steamship in this condition was taking in cargo, and certain deals in the lower hold being found to be in the way were removed to the between-decks and laid upon the lower deck beams. They were not laid for the purpose of forming a deck or to be used to support cargo, nor were they to remain there, but were simply placed on the beams temporarily, because they were in the way elsewhere. These deals, when so placed, extended from the stanchions amidships to the stringers in the wings, on each side, and for the most part covered the deck beams from the fore hatch forward. They were not fitted to each other or in any way secured to the beams, but simply laid side by side fore and aft upon the beams, in some

places lapping over each other. Between the stanchions amidships were open spaces; and in one place, just aft the forward beam, several of the deals were too short to extend to the forward beam, and these were therefore left with one end unsupported by a beam.

The libellant was employed to assist in stowing the cargo of the steamer. In the course of such employment he was directed to go to the eyes of the ship for some dunnage. No directions were given as to how the libellant was to go forward. He might have gone upon the stringer with safety. Instead of so doing he went upon the deals that were lying upon the beams. While so proceeding he stepped upon the unsupported ends of the deals that failed to extend to the forward beam. The deals tilted under his weight and he was precipitated to the lower hold, several deals falling with him, and thus received the injuries complained of.

Upon these facts the first question arising is, whether negligence has been proved. Clearly it was not negligence to allow the lower deck beams of this steamer to remain uncovered by a deck. The owners of the vessel had the right to construct and use their ship without any lower deck upon the lower deck beams. Such a between-decks being a common feature in ships, it cannot be held that a vessel so constructed was an improper vessel so far as her construction was concerned.

Neither was there any negligence in using the lower deck beams for the purpose of stowing loose plank upon them for a temporary purpose; such a use of this portion of a vessel is not unusual or improper. If there was any negligence it was in placing the loose deals upon the beams in such a manner as to leave their ends unsupported at the place where the libellant fell. But as already stated the deals were not intended to serve as a deck, nor was it necessary to go upon them in order to reach the place to which the libellant was sent for dunnage. There being no duty on the part of the ship to maintain a deck in the between-decks, and the evidence rendering it impossible to hold that the deals formed a

deck, it is difficult to see any ground upon which to hold that negligence has been proved.

It is said that the deals were so placed as to create the belief in any one required to go into the between-decks that a deck had been constructed there, and that the responsibility is therefore the same as if an improper and unsafe deck had in fact been constructed there. But, whatever might be the responsibility in such a case, no such case is made out by the evidence. The deals were not so placed as to justify the libellant in believing that he was proceeding upon a deck. The deals were rough, they were laid loosely without any fastening whatever, and, according to the evidence, were not evenly laid, but in some places lapped one upon another; moreover, the spaces between the stanchions were open. These openings were plainly visible, and were notice to all who might go upon the deals that they were not upon a deck.

The case is that of a use, by the libellant, of the deals for a purpose for which they were not intended, without necessity, and with fair notice from the manner in which they lay that they were not intended to be so used.

Such a case is not one in which it can be held that the injuries to the libellant were caused by negligence on the part of the ship owner, or of those entrusted with the care and management of the ship.

The libel must therefore be dismissed, and with costs.